**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leena Lee,<br><br>　　　　　Plaintiff,<br>vs.<br><br>United States Department of Homeland Security, et al.,<br><br>　　　　　Defendants. | No. CV-21-00648-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant United States of America's Motion for Summary Judgment (Doc. 58). For the following reasons, the Motion will be denied.

**I.    BACKGROUND**

This case arises from an automobile collision that occurred at about 3:50 a.m. on October 24, 2019 at the intersection of State Routes 87 and 187 in Pinal County, Arizona. (Doc. 64 at 1–2; Doc. 31 at 3). Andrew Swierski, an employee of the U.S. Immigration and Customs Enforcement acting within the scope of his employment, was driving a 2013 Ford Explorer westbound on State Route 87. (Doc. 64 at 2, 9; Doc. 35 at 2). Mr. Swierski had set his vehicle's cruise control to 65 miles per hour, which was the speed limit. (Doc. 64 at 7). Plaintiff Leena Lee was driving a 2015 Nissan Sentra northbound on State Route 187. (Doc. 64 at 2). Plaintiff encountered a stop sign at State Route 187's intersection with State Route 87; Mr. Swierski did not have a stop sign. (Doc. 64 at 2). The parties dispute whether Plaintiff properly yielded at the stop sign. (Doc. 64 at 2). The front of Mr. Swierski's vehicle collided with the side of Plaintiff's vehicle in the intersection.

(Doc. 64 at 1; Doc. 59-1 at 8).

Plaintiff has no memory of the events that occurred between the time that she left her workplace at approximately 2:00–3:00 a.m. on October 24, 2019, and when she woke up in the hospital the next day. (Doc. 64 at 5–6). She does not remember entering the intersection, including whether she stopped at the stop sign, nor does she remember the collision. (Doc. 64 at 4).

Plaintiff's operative First Amended Complaint seeks damages against the United States, the Defendant, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), for negligent action by Mr. Swierski. (Doc. 31). On October 7, 2022, following the close of discovery, Defendant filed the instant Motion for Summary Judgment, which has been fully briefed. (Docs. 58, 63, 65).

## II. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

## III. DISCUSSION

The Court will first address two procedural issues regarding the conferral requirement and violations of the Local Rules as well as the parties' evidentiary objections before moving to the merits of the Motion.

///

///

### a. Conferral Requirement

The Case Management Order entered in this case requires the parties to confer before filing a motion for summary judgment. (Doc. 40 at 5). The parties must "exchange a two-page statement describing any anticipated motion for summary judgment and response" for the purpose of "streamlining the issues in dispute, and dispensing of statements of fact." (Doc. 40 at 5). Here, Defendant attached a Certificate of Conferral to the Motion for Summary Judgment stating that counsel "conferred with Plaintiff's counsel via formal letter sent by email on October 6, 2022," and that "Defendant requested a response, but none was received." (Doc. 58 at 11). Plaintiff's Response to the Motion attaches an affidavit from her counsel stating that the letter from Defendant's counsel was sent after business hours on October 6, 2022, and requested a response by noon on October 7, 2022—but that Plaintiff's counsel was occupied with a court hearing and mediation on the morning of October 7, 2022, so he had no opportunity to respond. (Doc. 63-1 at 3). Defendant proceeded to file the Motion for Summary Judgment later that day, which was the deadline for filing dispositive motions. (Doc. 53).

To be sure, it would have been preferable for Defendant's counsel to initiate conferral prior to the eve of the dispositive motion deadline or, if that was truly impossible, to request a short extension of the dispositive motion deadline to allow for meaningful conferral. But there is no evidence of bad faith or prejudice with respect to defense counsel's eleventh-hour letter nor plaintiff's counsel's failure to respond, so the Court will take no action based on the conferral requirement.

### b. Local Rule Violations

First, as Defendant correctly notes, Plaintiff's Response (Doc. 63) was untimely. LRCiv 56.1(d) gives an opposing party thirty days to respond to a motion for summary judgment. Plaintiff's Response to Defendant's Motion for Summary Judgment was due by November 7, 2022, but it was not filed until November 9, 2022. Plaintiff did not request an extension of the deadline, nor did she offer any explanation for her untimeliness.

Second, however, Defendant's Reply brief fails to abide by the applicable page limit. LRCiv 7.2(e)(2) limits a reply brief to eleven pages, but Defendant's Reply contains thirteen pages of substantive content. Defendant did not request an extension of the page limit.

The rule violations provide grounds for the Court to strike both briefs. But because both parties failed to abide by the Local Rules and because neither violation is plainly prejudicial to the opposing party, the Court admonishes counsel for both parties for their noncompliance but will consider the full briefing of the Motion.

### c. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Still, courts "do not focus on the admissibility of the evidence's form" but rather "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Here, Plaintiff objects to four pieces of evidence provided by Defendant: (1) the Arizona Department of Public Safety crash report (the "Crash Report"); (2) the Casa Grande Justice Court's disposition of Plaintiff's traffic citation (the "Citation Disposition"); (3) a record from the Emergency Department of Dignity Health, Chandler Regional Hospital, where Plaintiff was treated following the collision (the "Emergency Report"); and (4) Paragraph 36 of Defendant's Statement of Facts ("SOF") due to its reference to a settlement between Mr. Swierski and Plaintiff's auto liability insurance carrier. Moreover, Defendant objects to the expert report of Tim Pebler (the "Expert Report") provided by Plaintiff. The Court addresses these objections in turn.

#### i. Crash Report

Plaintiff essentially argues that two categories of statements from the Crash Report are inadmissible. First, Plaintiff asserts that the Court should not consider evidence that Plaintiff received a traffic citation related to the collision while Mr. Swierski did not. Indeed, "[t]he fact of citation or non-citation of a driver by the investigating law enforcement officer is inadmissible in an action for negligence." *Ingrum v. Tucson Yellow*

*Cab Co.*, 642 P.2d 868, 872 (Ariz. Ct. App. 1981) (affirming exclusion of such evidence as improper opinion testimony); *see also Comanche v. United States*, No. CV-04-1953-PHXLOA, 2006 WL 566477, at *1 (D. Ariz. Mar. 6, 2006). Defendant's argument that the evidence is being used only "to point to the lack of evidence establishing Defendant's negligence" is nonsensical. (Doc. 65 at 6). *Ingrum* makes clear that the lack of a citation issued to Mr. Swierski cannot be used as evidence that he was not negligent. Further, Defendant's assertion that a traffic citation may be admissible to show negligence per se is irrelevant even if true, because the issue in this case is whether Mr. Swierski was negligent, not whether Plaintiff was negligent per se. The Court will not consider the traffic citation evidence in the Crash Report.

Second, Plaintiff asserts that statements made by Mr. Swierski to the investigating officer recounted in the Crash Report are inadmissible hearsay.[1] Defendant counters that they are admissible at the summary judgment stage because Mr. Swierski could testify to them at trial. The Court agrees that Mr. Swierski's statements in the Crash Report could be presented in admissible form at trial through Mr. Swierski's testimony as to his observations, so the Court will consider that evidence from the Crash Report.[2] *See Fraser*, 342 F.3d at 1037.

### ii. Citation Disposition

Plaintiff next argues that the Citation Disposition is inadmissible for the same reasons the issuance of the citation as mentioned in the Crash Report is inadmissible. The Court agrees and will not consider the Citation Disposition in its ruling.

### iii. Emergency Report

Third, Plaintiff objects to a statement in the Emergency Report noting that

---

[1] While Plaintiff makes reference to Federal Rule of Evidence 403, she provides no explanation of how the evidence is unfairly prejudicial, so the Court will not disregard the evidence on those grounds.

[2] To the extent Plaintiff argues that the entire Crash Report is inadmissible at this stage, that argument is unfounded as the investigating officer could testify to his observations contained therein.

Plaintiff "states that she may have fallen asleep" at the time of the collision. (Doc. 61 at 21). Plaintiff denies this statement's accuracy and argues that it is inadmissible hearsay not subject to any exception. Defendant counters first that it is not being offered to prove the truth of the matter asserted but rather that "Plaintiff has no recollection of the accident because she told the Emergency Room Doctor that she may have fallen asleep." (Doc. 65 at 8). But that itself is a conclusion drawn based on an acceptance of the truth of the statement. Regardless, it is undisputed that Plaintiff has no recollection of the crash, so the Court need not consider the Emergency Report to accept that fact. (Doc. 64 at 4).

Defendant also argues that Plaintiff's statement contained in the Emergency Report is admissible under Federal Rule of Evidence ("FRE") 803(4). FRE 803(4) provides an exception to the hearsay rule for "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." This exception applies only if "[t]he declarant herself . . . understand[s] that she is providing information for purposes of diagnosis or treatment." *United States v. Kootswatewa*, 893 F.3d 1127, 1133 (9th Cir. 2018). At this stage, and in the bare context of the Emergency Report, the Court cannot conclude that the statement would likely be admissible at trial because there is no indication that Plaintiff's statement that she may have fallen asleep was pertinent to nor made under the understanding that it would be used for diagnosis or treatment. *See id.* at 1132–33 (discussing foundation for the FRE 803(4) exception). Accordingly, the Court will not consider Plaintiff's statement in the Emergency Report that she may have fallen asleep.

### iv. SOF ¶ 36

Plaintiff's final objection is to the paragraph of the SOF stating that "Plaintiff's insurance company settled a personal injury lawsuit . . . that Mr. Swierski brought for his personal injuries against [Plaintiff]." (Doc. 59 at 6). Defendant argues that this fact "is being offered to demonstrate Plaintiff's lack of evidence of liability or negligence on the part of Defendant." (Doc. 65 at 8). The Court does not see how Plaintiff's insurance

company settling with Mr. Swierski shows that Plaintiff lacks evidence that Mr. Swierski was negligent. The Court need not consider this fact to determine whether Plaintiff has produced evidence sufficient to survive summary judgment on her negligence claim against Defendant.

*v.  Expert Report*

Defendant argues that the Expert Report offered by Plaintiff is inadmissible because it is based on assumptions that are not supported by the evidence. Specifically, Defendant asserts that the expert's conclusions rely on an assumption that Plaintiff stopped at the stop sign before entering the intersection. "Expert testimony cannot create a genuine issue of material fact if it rests on assumptions that are not supported by evidence." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019); *see* Fed. R. Evid. 702(b), 703. "A party's own speculation is insufficient to create a genuine issue of material fact, and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness." *Id.* at 856–57 (internal citation omitted).

The Court agrees with Defendant that the bulk of the Expert Report rests on the unsupported assumption that Plaintiff came to a stop at the stop sign. Plaintiff does not remember whether she stopped at the stop sign, and Mr. Swierski has consistently stated that she did not stop. (Doc. 64 at 4, 6). No other eyewitness testimony is presented to the Court. Instead, to dispute Defendant's assertion that she failed to yield at the stop sign, Plaintiff cites *only* to the Expert Report. (Doc. 64 at 2). In the Expert Report, Mr. Pebler first concludes, by entering the post-impact trajectories of the vehicles into the PC-Crash computer program, that Plaintiff's vehicle was traveling at approximately 25 miles per hour at impact while Mr. Swierski's vehicle was traveling at approximately 65 miles per hour. (Doc. 64-2 at 16). The next "Conclusion" paragraph is critical:

> According to the accident report, the Lee Nissan Sentra came to a stop sign on State Route 187 at State Route 87 before entering the intersection and the Swierski Ford Explorer collided with it. The distance the Lee Nissan Sentra would have accelerated to the area of impact was approximately 60 feet. Applying an acceleration rate of 0.35g, 11.27 fps$^2$, the

7

>Nissan Sentra would have been traveling approximately 25 miles per hour when the collision occurred. It would have taken the Lee Nissan Sentra approximately 3.25 seconds to reach the area of impact. The acceleration speed of the Lee Nissan Sentra to the area of impact is consistent with the impact speed calculated by PC-Crash and is consistent with the Lee Nissan Sentra stopping at the stop sign before accelerating into the intersection.

(Doc. 64-2 at 16). Based on his calculation that it would have taken Plaintiff 3.25 seconds to reach the point of collision and Mr. Swierski's 65-mile-per-hour speed, Mr. Pebler then concludes that Mr. Swierski was approximately 310 feet from the point of collision when Plaintiff began to enter the intersection, which "would have given him enough time and distance to respond and avoid the collision." (Doc. 64-2 at 16–17).

The problem for Plaintiff is that Mr. Pebler's calculation of Plaintiff's acceleration rate—on which all of his subsequent conclusions rely—is premised on Plaintiff accelerating from a complete stop at the stop sign. There is evidence that the distance from the stop sign to the point of collision was 60 feet, and that Plaintiff's vehicle was traveling 25 miles per hour at impact. But it is impossible to calculate the acceleration rate for the purpose of determining Plaintiff's travel time between the stop sign and the collision point without also knowing the velocity she was accelerating *from*—that is, her velocity at the point of the stop sign.[3] Thus, although the Expert Report is not especially clear in explaining its calculations, the calculations necessarily rely on an assumption that Plaintiff stopped at the stop sign. Given that Plaintiff's only citation in support of her assertion that she stopped at the stop sign is the Expert Report itself, however, there is no evidentiary basis for the Expert Report's assumption. Consequently, the Expert Report's conclusions that are predicated on the assumption that Plaintiff stopped at the stop sign— including its conclusions as to Plaintiff's acceleration rate, the time it took her to reach

---

[3] To illustrate this point, if Plaintiff had been traveling 25 miles per hour at the point of the stop sign and been traveling 25 miles per hour 60 feet later at the point of the collision, her acceleration rate obviously would have been zero, as she would not have been accelerating. And had Plaintiff been driving at 25 miles per hour the whole time, it would have taken her less time to travel between the stop sign and the collision point.

8

the area of the impact, Mr. Swierski's distance from the collision point when Plaintiff entered the intersection, and his ability to avoid the collision—cannot create a genuine issue of material fact as to those issues.[4] *See Stephens*, 935 F.3d at 856–57.

### d. Negligence Claim

Plaintiff's Complaint alleges negligence pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Under the FTCA, the federal government's liability is determined "in accordance with the law of the place where the act or omission occurred." § 1346(b)(1). Under Arizona law, a plaintiff must establish four elements to prove negligence: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Sanders v. Alger*, 394 P.3d 1083, 1085 (Ariz. 2017) (internal quotation marks omitted). Only the breach element is at issue in Defendant's Motion for Summary Judgment.[5] In Arizona, "a driver having the right of way . . . is still under an obligation to make that degree of observation as a reasonably prudent person would have made under such conditions." *Henderson v. Breesman*, 269 P.2d 1059, 1063 (Ariz. 1954); *see also Davis v. Weber*, 380 P.2d 608, 612 (Ariz. 1963) ("It is the settled law of this jurisdiction that the driver of a vehicle on a favored highway is not necessarily free from negligence in colliding with a vehicle

---

[4] Plaintiff argues that "whether she stopped or not, with 310 feet [between Mr. Swierski and Plaintiff at the time she entered the intersection], that would have given Mr. Swierski enough time and distance to respond and avoid the conclusion." (Doc. 63 at 7). But if Plaintiff did not stop at the stop sign, Mr. Swierski would have been less than 310 feet away when Plaintiff entered the intersection. Continuing the hypothetical from the previous footnote, if Plaintiff drove through the stop sign at 25 miles per hour, and thus took less time to travel between the stop sign and collision point, Mr. Swierski would have been closer to the intersection at the time Plaintiff's car entered. Put another way, Mr. Swierski would not have had 310 feet of distance whether or not Plaintiff stopped at the stop sign because his distance from the intersection is calculated using his 65 mile-per-hour velocity together with the calculation that it took Plaintiff 3.25 seconds to travel from the stop sign to the collision point, which is calculated based on her acceleration rate, which is calculated using the assumption that Plaintiff stopped at the stop sign.

[5] Plaintiff makes an argument as to causation, but Defendant's Motion does not assert that Plaintiff failed to make a sufficient showing to establish causation, so Plaintiff's argument is irrelevant to the disposition of the pending Motion.

entering from an intersecting street. The fact that the driver on the favored highway has the right-of-way does not relieve him from keeping a proper lookout and yielding the right-of-way, where he can, to another motorist when the favored driver discovers that the other is not going to yield."). Although breach is a "factual issue[ ] usually decided by" the factfinder, "summary judgment may be appropriate if no reasonable juror could conclude that the standard of care was breached." *Gipson v. Kasey*, 150 P.3d 228, 230 & n.1 (Ariz. 2007).

Initially, Plaintiff asserts, without citation, that "[t]he standard of care for [a] professional driver is similar to that afforded a common carrier." (Doc. 63 at 6). To the extent Plaintiff means to imply that professional drivers and common carriers are held to a heightened standard, that is false, as even common carriers are subject to "the objective, reasonable person standard in traditional negligence law." *Nunez v. Pro. Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104, 1109 (Ariz. 2012). A factfinder may consider a driver's training and other factors among the totality of the circumstances in determining whether the driver has breached the standard of care, but a professional driver is not subject to a heightened standard. *See id.*

The question, then, is whether Plaintiff has presented sufficient evidence such that a reasonable juror could conclude that Mr. Swierski breached the standard of care. As noted, the Expert Report cannot establish a genuine issue as to the amount of time Mr. Swierski had to react to Plaintiff's vehicle in the intersection and whether he could have avoided the collision. And there is minimal firsthand evidence of what occurred in the moments leading up to the collision; Plaintiff has no memory of what happened, so the only eyewitness testimony in the record comes from Mr. Swierski.

Plaintiff draws particular attention to testimony from Mr. Swierski's deposition in which he stated that he first saw Plaintiff's headlights "[a] split second before impact." (Doc. 61 at 67). Plaintiff argues that had Mr. Swierski kept a proper lookout, he would have seen her headlights sooner and had time to avoid the collision. Defendant counters that Mr. Swierski's answer is taken out of context and that "Plaintiff's counsel was able

to confuse [Mr. Swierski] into saying something that is inconsistent with the rest of his testimony by asking the same question repeatedly and in different ways, despite it being answered." (Doc. 65 at 11). The Court has reviewed the whole context of the relevant portion of the deposition, however, and the "split second" answer was his response to the *first time* that counsel asked him when he first saw Plaintiff's headlights. (Doc. 61 at 66–67). The exchange certainly goes on to become more muddled, with Mr. Swierski later insisting that "the last time I recall seeing [the headlights] was right before [the collision]. I don't recall if I saw them prior to impact or prior to the second before impact." (Doc. 61 at 67). At the very least, Mr. Swierski's testimony is internally contradictory or unclear, and the Court cannot resolve those contradictions at this stage. *See Nelson v. City of Davis*, 571 F.3d 924, 928–29 (9th Cir. 2009).

Defendant also argues that the dispute over when Mr. Swierski first saw Plaintiff's headlights is immaterial because regardless, there is no evidence that Mr. Swierski could have avoided the collision. The Court disagrees. The evidence suggests that there were no obstructions that would have blocked Mr. Swierski from seeing Plaintiff's headlights as he approached the intersection.[6] (Doc. 64 at 10). A reasonable factfinder who concluded that Mr. Swierski in fact did not see Plaintiff's headlights until a split second before impact could therefore conclude that Mr. Swierski was not properly looking out ahead and could reasonably infer negligence. Thus, even though the evidence in support of Plaintiff's case is relatively light, it is enough to survive summary judgment. *See Odekirk v. Austin*, 366 P.2d 80, 81 (Ariz. 1961) (finding evidence sufficient to sustain a negligence finding where the jury could have believed that the defendant did not see the plaintiff until an instant before his car struck the plaintiff but that he should have seen the plaintiff sooner); *Smith v. Devlin*, 728 P.2d 1231, 1234 (Ariz. Ct. App. 1986) (holding that even though the evidence of a driver's failure to keep a proper lookout was "not

---

[6] This derives in part from Mr. Pebler's rebuttal report, but because the relevant portion is not predicated on the assumption that Plaintiff stopped at the stop sign, the Court may consider it.

compelling" and was discredited or contradicted by other evidence, the case should have gone to the factfinder). Accordingly,

**IT IS ORDERED** that Defendant United States of America's Motion for Summary Judgment (Doc. 58) is **denied**.

Dated this 14th day of December, 2022.

Honorable Steven P. Logan
United States District Judge